IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 18-cr-00330-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

PEDRO CHAVEZ-VARELA,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing: Order)
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 12:45 p.m., on the 8th day of January, 2019, Wayne Aspinall Federal Building and United States Courthouse, Grand Junction, Colorado.

**A P P E A R A N C E S**

    PETER HAUTZINGER, Assistant U.S. Attorney, 205 North 4th Street, Suite 400, Grand Junction, Colorado, 81501, appearing for the Government.

    RICHARD STUCKEY, Attorney at Law, 1801 Broadway, Suite 1100 Denver, Colorado, 80202, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1    (The following proceedings were had and entered of
2 record after the Court heard the arguments of counsel and
3 statement of defendant:)
4    *THE COURT:* Thank you.
5    Then I'll announce the sentence that I intend to
6 impose. And, of course, you'll have an opportunity, counsel,
7 to make objections before judgment is entered. If you believe
8 that the sentence that I describe is premised upon error or it
9 raises an issue that you've not had opportunity to research or
10 address, I invite you to request a continuance.
11    Imposition of a sentence in a federal criminal case is
12 governed by a number of statutes. The umbrella statute is
13 18 U.S.C. Section 3553. In imposing sentence in this case, the
14 Court has considered the objectives and factors as set forth in
15 Section 3553(a). The statute requires the Court to determine
16 the sentence that is sufficient but not greater than necessary
17 to satisfy particular objectives: To reflect the seriousness
18 of the offense; to promote respect for the law; to provide just
19 punishment; to adequately deter criminal conduct; to protect
20 the public from further crimes by the defendant; to provide the
21 defendant with needed educational or vocational training,
22 medical care, or other correctional treatment in the most
23 effective manner.
24    In addressing those objectives, the statute directs
25 the Court to consider a number of factors: The nature and

1  circumstances of the offense; the history and characteristics
2  of the defendant; the kinds of sentences that are available;
3  the sentence prescribed by the federal sentencing guidelines;
4  the need to avoid unwarranted sentence disparities among
5  defendants with similar records found guilty of similar
6  conduct; and in the appropriate case, the need for restitution.
7         At the beginning of this hearing, I identified those
8  documents that I had studied in preparing for the hearing,
9  confirmed with counsel that they and the defendant had had
10 adequate opportunity to review and consider those documents,
11 and that there were no additional documents that needed to be
12 considered.  There is no dispute by the parties as to the facts
13 stated in the presentence investigation report or to its
14 calculation under the sentencing guidelines, and that's where
15 we start.
16        For violation of 8 U.S.C. Section 1326(a) and (b)(1),
17 we apply Section 2L1.2 of the guidelines.  That sets a Base
18 Offense Level of 8.  In addition, here, there are specific
19 offense characteristics resulting in an addition of four
20 levels; that is because the defendant was convicted of another
21 felony offense after he had been removed from the United
22 States.  Here, he was convicted of felony menacing in Eagle
23 County Court and received 60 days in jail with 4 years of
24 probation on November 20, 2017.  And he had been first removed
25 from the United States on February 13, 2018 -- I'm sorry.  I

1    misstated the standard -- the standard is whether or not there
2    was a conviction prior to the first removal; and, here, there
3    was.  The adjusted offense level is therefore 12.  The
4    acceptance of responsibility results in a decrease of two
5    levels, resulting in a Total Offense Level of 10.
6            Then we turn to the criminal history.  Here, there was
7    a conviction for illegal entry in 1978, followed by a
8    deportation; in 1997, a conviction for driving under the
9    influence; 1998, driving under the influence; 1999, disorderly
10   conduct; 2000, driving under the influence; 2006, obstructing a
11   peace officer; 2007, driving -- permitting an unauthorized
12   minor to drive; 2010, driving under the influence; 2011,
13   driving under the influence; 2017, disorderly conduct; and in
14   2017, a weapon, prohibited use, drunk with a gun, and a felony
15   menacing conviction.
16           This results in a criminal history score of 6, which
17   places the defendant in Criminal History Category IV.  With
18   Criminal History Category of IV and an offense level of 10, the
19   guidelines recommend 15 to 20 months of incarceration,
20   supervised release of 1 to 3 years, a fine of 4,000 to $40,000,
21   and a special assessment of $100.
22           The Government has moved to depart under the
23   fast-track program.  That motion is found at Docket No. 33.  It
24   would result in a three-level downward departure under 5K3.1.
25   A three-level departure takes the offense level from 10 to 7

1   and results in an incarceration range of 8 to 14 months.

2           I'm not finding a reflection on the fine or the
3   supervised release.  Here it is in a footnote.  It reflects --
4   they stay the same.  The fine range is 1,000 to $9,500, but the
5   supervised release stays the same at one to three years.

6           There is no request for a variant sentence.  The
7   Government argues for ten months of incarceration, and the
8   defense asks for bottom of the guidelines at eight months of
9   incarceration.

10          I'm concerned.  I'm concerned here because there
11  already has been a demonstrated pattern of one reentry into the
12  United States illegally, and the defendant knows that he's not
13  supposed to be here.  Since he's been here, he has repeatedly
14  engaged in drunk driving, putting at risk everyone on the roads
15  and highways that he travels.

16          In addition, he has demonstrated that he -- an
17  exercise -- lack of exercise of good judgment in having weapons
18  and in engaging in conduct that equates to menacing behavior.
19  Under these circumstances, I -- even though he has received,
20  generously, from the Government a fast-track departure, I do
21  not believe that he is appropriately situated at the bottom end
22  of the guideline range.  Quite to the contrary, I believe it is
23  at the top end of the guideline range, at 14 months, which is
24  appropriate under the circumstances, given his extensive
25  criminal history and the fact that he has been previously

1  deported from the United States and reentered illegally.

2        It is, therefore, my intention to impose a sentence of
3  14 months of incarceration to be followed by 3 years of
4  supervised release as a deterrent to him reentering the United
5  States.  It is expected that he will be deported after he
6  completes his term of incarceration.  And most of his family
7  and friends -- if not all of them -- are located here in the
8  United States.  There, therefore, likely will be a strong
9  desire for him to return to the United States to see them.  In
10 addition, there has been no proffer as to how he's going to
11 support himself in Mexico and what plans and arrangements he
12 has made there.

13       So I think the risk of him wanting to come back here
14 is substantial.  And rather than imposing the standard
15 conditions on supervised release, I will impose only a special
16 condition, which is intended to be a deterrent.  That special
17 condition would be that if he is deported, he not thereafter
18 reenter the United States illegally; and if he can reenter the
19 United States legally, he report to the nearest United States
20 Probation Office within 72 hours of his return.

21       In addition, I would recommend that wherever he is
22 housed, that his medical conditions be addressed.

23       *MR. STUCKEY:*  We thank the Court for that.

24       *THE COURT:*  Which I suspect will be better medical
25 care than what he's going to receive once he's released.

| | |
|---|---|
| 1 | *MR. STUCKEY:*  You mean -- |
| 2 | *THE COURT:*  Any need for clarification, objection, |
| 3 | further explanation, or request for continuance? |
| 4 | *MR. HAUTZINGER:*  Not here, Your Honor. |
| 5 | *THE COURT:*  Okay. |
| 6 | *MR. STUCKEY:*  No, ma'am. |
| 7 | *THE COURT:*  All right.  Then having determined the |
| 8 | sentence that I believe is appropriate under |
| 9 | 18 U.S.C. Section 3553, taking into account the sentencing |
| 10 | objectives and the sentencing factors, it is the judgment of |
| 11 | the Court that the defendant, Pedro Chavez-Varela, be committed |
| 12 | to the custody of the Bureau of Prisons for a term of 14 |
| 13 | months.  It is recommended by the Court that his physical |
| 14 | medical condition be assessed and addressed during this time |
| 15 | period. |
| 16 | After release from imprisonment, he will be placed on |
| 17 | supervised release for a term of three years.  While on |
| 18 | supervision, he will not commit another federal, state or local |
| 19 | crime and will not unlawfully possess or use a controlled |
| 20 | substance.  I waive the requirement of drug testing in light of |
| 21 | the fact that it's likely he will be deported.  He will, |
| 22 | however, cooperate in the collection of DNA as directed by the |
| 23 | probation officer. |
| 24 | The standard conditions of General Order 2016-1 are |
| 25 | not imposed.  However, a special condition in accordance with |

1   18 U.S.C. Section 3553(a) and 3583(d) is imposed.  That
2   condition is that if he is deported, he must not thereafter
3   reenter the United States illegally; and if he can reenter the
4   United States legally, he must report to the nearest United
5   States Probation Office within 72 hours of his return.
6        Sir, I am doing this as a deterrent.  I know you're
7   going to want to come back to the United States.  You can't.
8   And the reason this is a deterrent is, if you come back
9   illegally, as you've done before, you can be charged with
10  illegal reentry again, and you can be charged with violating
11  the terms and conditions of supervised release.  If you're
12  convicted of both of those, two separate prison sentences can
13  be imposed; and they can run back to back, making the time that
14  you spend in prison much longer than the time you're spending
15  now.
16       Please keep that in mind after you're deported.  If
17  you want to stay out of jail, you need to stay out of the
18  United States unless you can come back legally.
19       No fine is imposed for the reasons stated, the
20  inability of the defendant to pay.  The special assessment of
21  $100, however, is due and payable immediately.
22       Sir, I advise you of your right to appeal this
23  sentence.  To the extent that you reserve that right in your
24  plea agreement, you must exercise it within 14 days after
25  judgment is entered.  And you do so by filing a notice of

1  appeal.  Now, ordinarily your attorney, Mr. Stuckey, would file
2  the notice of appeal for you; but if for some reason he is
3  unable or unwilling to do so and you wish to appeal, you may
4  request and I will direct the Clerk of Court to file a notice
5  of appeal on your behalf.
6          Is there any further business to bring before the
7  Court?
8          *MR. HAUTZINGER:*  I don't believe so, Your Honor.
9          *MR. STUCKEY:*  We have none, Your Honor.  We thank the
10 Court.
11         *THE COURT:*  Thank you very much, counsel; thank you to
12 our marshal staff and our probation officer, our court staff,
13 and our interpreter.  I apologize for the mix-up with regard to
14 the starting of this hearing.  We will stand in recess until --
15 until 2:00 o'clock.  That will give the parties -- the staff in
16 Denver and the staff here in Grand Junction an opportunity to
17 get lunch before we begin the next hearing.
18         *THE DEFENDANT:*  Thank you, Your Honor.
19         (Recess at 1:13 p.m.)
20                    REPORTER'S CERTIFICATE
21         I certify that the foregoing is a correct transcript
   from the record of proceedings in the above-entitled matter.
22
           Dated at Denver, Colorado, this 11th day of January,
23 2019.
24
25                                    _____
                                      Therese Lindblom,CSR,RMR,CRR